NOT FOR PUBLICATION                                                                                  (Docket No. 5)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____  :
                                     :
IN RE BAYSIDE PRISON LITIGATION      :
                                     :
PAUL MILTON DURHAM,                  :
                                     :
            Plaintiff,               :          Civil No. 08-5149 (RBK/JS)
                                     :
       v.                            :          **OPINION**
                                     :
WILLIAM H. FAUVER, et al.,           :
                                     :
            Defendants.              :
_____  :

**KUGLER**, United States District Judge:

      This matter arises out of the alleged abuse of prisoners at the Bayside State Prison during the "lockdown" period after the murder of a prison official in July 1997.  Presently before the Court is a motion by Defendants for an order to modify the Opinion/Report of Special Master Bissell in the case brought by Mr. Paul Milton Durham (Plaintiff).  Defendants seek an order dismissing claims for supervisory liability and individual liability against Sgt. Roberts.  Defendants argue that supervisory liability does not attach because the events giving rise to Plaintiff's claim arose after the lockdown period.  Defendants also argue that individual liability is inappropriate because the Special Master previously found that Sgt. Roberts is not a defendant implicated by Plaintiff's claims.  Plaintiff does not dispute Defendants' claim that the events that

1

gave rise to his claim occurred after the lockdown period, but nonetheless argues that the Special Master appropriately found Sgt. Roberts liable as a supervisor. For the reasons discussed below, Defendants' Motion is granted. The Court shall enter judgment consistent with this Opinion.

I.  BACKGROUND

The general events that gave rise to this litigation are outlined in this Court's opinion in In re Bayside Prison Litigation, Nos. 08-0146, 08-0330, 08-1271, 08-2947, 08-3526, 2010 WL 3732948, at *1 (D.N.J. Sept. 17, 2010). Therefore, the Court will outline additional facts only as they pertain to the present dispute.

Plaintiff's charge was tried before the Special Master on October 29, 2008 and January 5, 2009. During the hearing on October 29, 2008, counsel for both Plaintiff and Defendants were present, along with Sgt. Roberts. During the hearing, Plaintiff's counsel, Mr. Kaigh, represented to the Special Master that Sgt. Roberts was not a named defendant in this litigation. Specifically, Mr. Kaigh stated "I don't believe Roberts was named as a defendant by this plaintiff." (Trial Tr., Oct. 29, 2008., at 154.). In response, the Special Master stated "I would make a determination that no individual defendants, shall we say line officers, if you will, have been adequately implicated here." (Id.) Sgt. Roberts did not testify at the hearing on October 29, 2008.

Pursuant to Federal Rule of Civil Procedure 53(e), Special Master Bissell entered an Opinion/Report on April 16, 2010, and found as follows. (Doc. No. 5.) On January 9, 1998, prison officials transferred Plaintiff from where he was residing in E Unit to the lockup in B Unit. During the transfer, tight handcuffs were placed on Plaintiff's wrists, which caused some external bleeding. Instead of permitting Plaintiff to walk upright from E Unit to B Unit, prison officials made him "duck walk" in a crouched position. There is no evidence that it was

necessary to transport Plaintiff in this fashion.  Moreover, the Special Master found that occasionally Plaintiff needed to be adjusted into an upright position so that he could continue to "duck walk," and that eventually prison officials dragged him through the halls when he could no longer hold the "duck walk" position on his own.

The Special Master also found that the guards subjected Plaintiff to other forms of cruelty.  As Plaintiff was transported from E Unit to B Unit, prison officials "took the opportunity to bump his head into the gates and doors in order to open them . . . ."  (Durham Special Master's Report, at 7.)  When he arrived at B Unit, Plaintiff was stripped of his garments and left naked in his cell until the housing officer arrived to give him bedding and clothing.

Based upon these findings of fact, the Special Master concluded that Defendants used excessive force in a "sadistic and unnecessary fashion," thereby inflicting cruel and unusual punishment on Plaintiff.  (Id. at 7.)  The Special Master then awarded Plaintiff compensatory damages in the amount of $4,500.00.  After the Special Master completed the report, however, and off the record, Plaintiff's counsel approached the Special Master and the following dialogue ensued:

> Judge Bissell:  Mr. Lindsay?
> Mr. Lindsay:  Judge, on Mr. Durham's decision just issued, were there individual officers identified?
> Judge Bissell:  There was.  Sergeant Roberts was identified as being in charge of the detail that removed him from E Unit to B Unit.  And my recollection is, and I searched the record, Sergeant Roberts did not testify here to refute that event.
> Mr. Lindsay:  So your decision would be against Mr. Roberts, Officer Roberts?
> Judge Bissell:  Yes, that's correct, as the supervisor of that detail.  Where it goes from there, remains to be seen, but thank you for that clarification.

(Id. at 11.) The Special Master's report does not state when Sgt. Roberts was implicated in this dispute or what evidence formed the basis of his determination that Sgt. Roberts was responsible for the detail that transported Plaintiff from E Unit to B Unit. Moreover, there is no evidence that Sgt. Roberts was afforded the opportunity to testify in his defense after the hearing on October 29, 2008 and before the Special Master entered his Opinion/Report on April 16, 2009.

On March 29, 2010, the Special Master issued a report that specifically addressed the issue of Supervisor Liability. In the report, the Special Master stated:

> I recall that some cases have been tried before me where assaults on plaintiffs allegedly occurred after the period of lockdown at Bayside and after the SOG unit had departed. Because the basis for supervisory liability is the lockdown policy and program itself (as designed and implemented) I find there is no basis for supervisory liability for claims based on alleged Eight Amendment violations occurring after September 3, 1997.

(Special Master's Report on Supervisory Liability, at 24.)

## III.   DISCUSSION

Under the Special Master Agreement, all findings of fact by the Special Master are binding, but all conclusions of law may be reviewed de novo by this Court. See Civ. No. 97-5127, Doc. No. 958 at ¶ 8; Fed. R. Civ. P. 53(f)(3),(4). Both parties agreed to terms of the Special Master Agreement.

Defendants argue that (1) because the Special Master's report on supervisor responsibility on March 29, 2010 provided that "there is no basis for supervisory liability for claims based on Eighth Amendment violations occurring after September 3, 1997," Plaintiff's claims of supervisory liability should be dismissed; and (2) Plaintiff's individual liability claim should be dismissed because the Special Master ruled that no individual officers were implicated in the

4

events that gave rise to Plaintiff's claim. Plaintiff does not challenge the cut-off date for supervisory liability, but argues that Sgt. Roberts is a proper defendant in this litigation notwithstanding the contrary representations by former counsel to Plaintiff, Mr. Kaigh. As a result, Plaintiff asks this Court to remand the case to the Special Master for reconsideration and allow Sgt. Roberts to testify as to his involvement in Plaintiff's case.

The Court finds that Plaintiff's claims of supervisory liability and individual liability are dismissed for the following reasons. This case is strikingly similar to a case decided by this Court in the same litigation on September 17, 2010. (Civ. No. 08-2947, Doc. No. 10). In that case, Plaintiff Brown arrived at Bayside on September 23, 1997 - twenty days after the lockdown period ended. (Id. at 8.) After Plaintiff Brown informed the SOG guards why he was transferred to B Unit, they attacked him. (Id. at 9.) However, during trial, Plaintiff Brown was unable to identify the individual officers who attacked him. (Id.) Instead, Plaintiff Brown attempted to use prison duty logs to prove that the officers who were on duty at the time he was attacked and were responsible for his injuries. (Id. at 10.) Without identifying the specific officers who attacked Plaintiff Brown, the Special Master awarded $7,500 in compensatory damages. (Id. at 9.) The defendants moved to modify the Special Master's Opinion/Report of October 3, 2008 to dismiss the award of compensatory damages. (Civ. No. 08-2947, Doc. No. 6.) The defendants argued that "because [Plaintiff Brown] could not identify his attackers and the Special Master did not find any individual responsible for the attack, liability could only attach to the Supervisor Defendants." (Civ. No. 08-2947, Doc. No. 10, at 9.) The Defendants also argued that because the Special Master found that the Supervisor Defendants are only liable for events that occurred between July 30 and September 3, 1997, and Plaintiff Brown's injuries occurred on September

5

23, 1997, the Court should dismiss the Special Master's award. (Id.) The Court refused to accept Plaintiff's argument that the Supervisor Defendants were liable for his injuries based on evidence collected from other trials in the Bayside litigation, and held that because the Plaintiff Brown did not challenge the liability cut-off date for the Supervisor Defendants, the Court was required to grant Defendants' motion to dismiss. (Id. at 17.)

Regarding supervisory liability, similar to Plaintiff Brown's case, where the SOG guards attacked Plaintiff Brown twenty days after the end of the lockdown period, here, Plaintiff's attack occurred approximately four months after the liability cut-off date for Supervisor Defendants. Moreover, Plaintiff does not challenge the cut-off period for liability of Supervisor Defendants. Therefore, supervisory liability may not attach because the alleged harms occurred outside of the lockdown period.

With respect to the issue of individual liability, similar to Plaintiff Brown's case, where the Special Master could not identify his attackers, here, there is no evidence that the Special Master identified the individual officers who attacked Plaintiff. Instead, the Special Master's Opinion/Report merely establishes that Sgt. Roberts was the supervisor of the detail that transported Plaintiff. However, the fact that Sgt. Roberts was responsible for the conduct of the officers under his command at the time Plaintiff was attacked does not prove that he participated in the attack himself.[1] Hill v. Algor, 85 F. Supp. 2d 391, 406 (D.N.J. 2000) (finding evidence

---

[1] Neither does the Special Master's Opinion/Report provide a basis for finding Sgt. Roberts liable for failing to intervene. Although an officer may be liable for "failing to protect an inmate from another officer's use of excessive force 'if there is a realistic and reasonable opportunity to intervene," Matthews v. Villella, 381 Fed. Appx. 137, 140 (3d Cir. 2010) (quoting Smith v. Mensinger, 293 F.3d 641, 650-51 (3d Cir. 2002)). However, here, the Special Master's report does not indicate that Sgt. Roberts was physically present when the SOG officers assaulted Plaintiff or that Sgt. Roberts knew of the assault. Instead, the Special Master's Opinion/Report merely states that "Sergeant Roberts was identified as being in charge of the detail that removed [Plaintiff] from E Unit to B Unit. And my recollection is, and I searched the record, Sergeant Roberts did not testify here to refute that event." Therefore,

that particular defendant was with plaintiff sometime after the alleged beating in his cell and evidence disputing officer's testimony as to whether plaintiff was bleeding did not establish that defendant more likely than not was the one responsible for the assault).  Therefore, because nothing in Special Master Bissell's report or the evidence in the record proves that Sgt. Roberts attacked Plaintiff while transferring him from E Unit to B Unit, Plaintiff's individual liability claim is dismissed.

IV.     **CONCLUSION**

For the foregoing reasons, Plaintiff's claims against Sgt. Roberts for supervisory liability and individual liability are dismissed.  An appropriate order shall issue today.


Dated: 11/16/2010                                                       /s/ Robert B. Kugler
                                                                                 ROBERT B. KUGLER
                                                                                 United States District Judge

---

based upon the Special Master's factual findings, there is no basis for Sgt. Roberts's liability for failing to intervene.